# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **TAKESHA SANDERS BRACE,**<br><br>*Plaintiff*,<br><br>v.<br><br>**AT&T MOBILITY SERVICES, LLC,**<br><br>*Defendant*. | **CASE NO.: 3:24-CV-1119** |

## COMPLAINT AND JURY REQUEST

**NOW COMES** the Plaintiff, Takesha Sanders Brace ("Brace"), complaining of the Defendant, AT&T Mobility Services, LLC ("AT&T"), and alleges the following to be true:

### INTRODUCTION

**1**     This action arises from Defendant's termination of Brace's employment in violation of Title VII of the Civil Rights Act of 1964 (specifically, race, national origin, and retaliation) as well as the Americans with Disabilities Act of 1990, as amended.

**2**     Each paragraph of this Complaint incorporates all others, and all exhibits are incorporated as if fully laid out herein.

### PARTIES, JURISDICTION, AND VENUE

**3**     Plaintiff is a resident of York County, South Carolina, and is neither a minor nor incompetent.

4      Defendant is a foreign corporation with offices in Mecklenburg County, North Carolina, and a registered agent in Raleigh, North Carolina.

5      This Court has subject-matter jurisdiction over this action pursuant to any/all of the following:

      **5.1**      28 U.S.C. § 1331, as the action arises out of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990, as amended;

      **5.2**      28 U.S.C. § 1332, as the amount in controversy is reasonably expected to exceed $75,000—exclusive of interest and costs—and is between citizens of different states; and/or

      **5.3**      With regard to Plaintiff's state law claims, 28 U.S.C. § 1367(a), as the state law claims form part of the same case or controversy as those giving rise to original jurisdiction.

6      This Court has personal jurisdiction over all parties to this matter pursuant to any/all of the following:

      **6.1**      Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure, which requires the federal district courts to use the rules for personal jurisdiction of the state where the district court is located;

      **6.2**      N.C. Gen. Stat. § 1-75.4(1)(d), as Defendant was engaged in substantial business activity within this state at the time service of process was made upon it; and/or

      **6.3**      N.C. Gen. Stat. § 1-75.4(3), as this action arises from a local act or omission causing injury to Plaintiff's person or property.

**7**      Venue is proper in this Court pursuant to any/all of the following:

      **7.1**      28 U.S.C. § 1391(b)(1), as Defendant is a resident of the Western District of North Carolina; and/or

      **7.2**      28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to this action occurred in the Western District of North Carolina.

**8**      Brace filed a timely charge of discrimination regarding the claims brought herein with the United States Equal Employment Opportunity Commission on September 10, 2024 and received a dismissal and notice of right to sue on September 25, 2024.

## STATEMENT OF THE FACTS

**9**      Brace was employed by Defendant from approximately 2010 through August 26, 2024. Her final position was that of Retail Sales Consultant ("RSC") at Defendant's location in Pineville, NC.

**10**      Brace performed her job duties to the reasonable expectations of Defendant.

**11**      Prior to the events alleged herein, Brace had no disciplinary actions which contributed to her termination.

**12**      From approximately October 2022 through April 2023, Brace took an extended leave due to a medical condition which, *inter alia*, substantially impaired Brace's neurological bodily functions and substantially limited Brace in the major life activities of thinking and concentrating. This condition persisted intermittently for the remaining duration of Brace's employment with Defendant.

**13**     Brace requested this leave through Defendant's standard procedures and the leave was granted.

**14**     Upon returning to work, Brace requested accommodations for her disability, including a flexible schedule to deal with flare-ups and doctor appointments as needed, and the ability to wear sunglasses and/or work in a dark location as needed. Defendant initially granted these accommodations, and they were effective in allowing Brace to perform the essential functions of her job.

**15**     Defendant's practice for properly documenting Brace's accommodated time off was to manually remove absences from its attendance tracking system. These would sometimes accrue in a batch, which Brace's manager would remove all at once.

**16**     Brace's manager moved to another location in March 2024, and Anthony Cantillo ("Cantillo") assumed the role of Store Manager.

**17**     When Cantillo assumed the role of store manager, Brace had accommodation-related time off which had not yet been manually removed from Defendant's attendance tracking system. Despite Brace notifying Cantillo of her accommodation, he issued her a written warning for attendance, citing the days which should have been covered by her accommodation.

**18**     On or about March 25, 2024, Brace met with Cantillo and Julio Cintron—the Area Retail Sales Manager—("Cintron") to review her accommodations. Cintron refused to continue Brace's accommodations, stating that she would need to schedule her doctor appointments outside of work hours.

**19**     In that meeting, Cintron stated that the previous days off covered by Cantillo's write-up would be properly removed, per the previous accommodation practice. They were not.

**20**    On or about June 18, 2024, Brace received another attendance write-up which still included the previous dates which were covered by her accommodation.

**21**    On July 13, 2024, Brace showed up to work wearing sunglasses to deal with a flare-up of her disability, but was ordered to go home by Cantillo, who said she was unable to wear sunglasses at work.

**22**    On August 26, 2024, Defendant terminated Brace's employment – purportedly for her accrual of attendance points, including the previous accommodation-related points and points accrued on July 13, 2024.

**23**    AT&T has a national program referred to as "Conexión," which focuses on providing services to a primarily Latino clientele in areas where doing so is beneficial, such as predominantly Latino neighborhoods.

**24**    Prior to becoming the Area Retail Sales Manager for the region including Defendant's Pineville office, Cintron was a Conexión Sales Executive for Defendant in Florida.

**25**    Cintron stated on multiple occasions that he intended to turn Pineville into a Conexión location. This was reflected in the printing of Conexión shirts and in emails mentioning Pineville as a Conexión location.

**26**    Brace was the only African-American employee at the Pineville location at the time of her termination. All other employees were Hispanic.

**27**    Upon information and belief, Cantillo, who is also Hispanic, received the Store Manager position from Cintron without even applying from it, after having previously been an Assistant Manager in an underperforming store.

28      Brace received substantially worse treatment than similarly situated Hispanic employees.

29      In approximately June 2024, a Hispanic RSC stopped coming into work. It was discovered that her family member had cancer. This employee, who had only been at the store for approximately four months, was simply taken off of the schedule at Cantillo's discretion, and her absences were not used against her. She remained off the schedule for approximately two months, at which point she was allowed to return with her seniority intact.

30      Another Hispanic RSC was given a warning for both attendance points and falsifying time sheets. When he continued to be late, he was instructed to resign so that he could be re-hired shortly thereafter. He was rehired at a different location and, upon information and belief, prior to Brace's EEOC filing, was called to return to his previous location by Cintron. Upon information and belief, Cintron reversed this decision upon learning of Brace's EEOC filing.

31      On or about June 17, 2024, Brace filed a complaint with AT&T's ethics department, alleging discrimination based on race and outlining Defendant's failure to accommodate her disability.

32      Defendant closed this complaint just days prior to terminating Brace's employment.

33      Defendant has 15 or more employees.


# FIRST CAUSE OF ACTION
## Wrongful Termination – Disability (ADA)
*42 U.S.C. § 12112* et seq.

34      Brace was a qualified individual with a disability.

**35** Brace was subjected to the adverse employment action of termination.

**36** Brace was fulfilling her employer's legitimate expectations at the time of termination.

**37** The circumstances of Brace's termination raise a reasonable inference of unlawful discrimination.

## SECOND CAUSE OF ACTION
### Wrongful Termination – Disability (NC Public Policy)
*As expressed in N.C. Gen. Stat. § 143-422.2*

**38** It is against the public policy of North Carolina to terminate an employee due to disability.

**39** Brace was a qualified individual with a disability.

**40** Brace was subjected to the adverse employment action of termination.

**41** Brace was fulfilling her employer's legitimate expectations at the time of termination.

**42** The circumstances of Brace's termination raise a reasonable inference of unlawful discrimination.

## THIRD CAUSE OF ACTION
### Failure to Accommodate – Disability (ADA)
*42 U.S.C. § 12112 et seq.*

**43** Brace was an employee with a disability within the meaning of the ADA, as amended.

**44** Defendant had notice of Brace's disability.

45       With reasonable accommodation, Brace could perform the essential functions of her job.

46       Defendant failed to make such accommodations.

## FOURTH CAUSE OF ACTION
### Wrongful Termination – Race (Title VII)
*42 U.S.C. § 2000e* et seq.

47       Brace was a member of a protected class based on her race (African-American).

48       Brace suffered the adverse employment action of termination.

49       At the time of her termination, Brace was performing at a level that met her employer's legitimate expectations.

50       The circumstances of Brace's termination raise a reasonable inference of unlawful discrimination.

## FIFTH CAUSE OF ACTION
### Wrongful Termination – Race (NC Public Policy)
*As expressed in N.C. Gen. Stat. § 143-422.2*

51       It is against the public policy of North Carolina to terminate an employee due to race.

52       Brace was a member of a protected class based on her race (African-American).

53       Brace suffered the adverse employment action of termination.

54       At the time of her termination, Brace was performing at a level that met her employer's legitimate expectations.

55       The circumstances of Brace's termination raise a reasonable inference of unlawful discrimination.

## SIXTH CAUSE OF ACTION
### Wrongful Termination – National Origin (Title VII)
*42 U.S.C. § 2000e et seq.*

56      Brace was a member of a protected class based on her national origin (non-Hispanic).

57      Brace suffered the adverse employment action of termination.

58      At the time of her termination, Brace was performing at a level that met her employer's legitimate expectations.

59      The circumstances of Brace's termination raise a reasonable inference of unlawful discrimination.

## SEVENTH CAUSE OF ACTION
### Wrongful Termination – National Origin (NC Public Policy)
*As expressed in N.C. Gen. Stat. § 143-422.2*

60      It is against the public policy of North Carolina to terminate an employee due to national origin.

61      Brace was a member of a protected class based on her national origin (non-Hispanic).

62      Brace suffered the adverse employment action of termination.

63      At the time of her termination, Brace was performing at a level that met her employer's legitimate expectations.

64      The circumstances of Brace's termination raise a reasonable inference of unlawful discrimination

## EIGHTH CAUSE OF ACTION
### Retaliation (ADA)
*42 U.S.C. § 12112* et seq.

65      Brace engaged in the protected activity of filing a complaint of ADA discrimination

and failure to accommodate with AT&T's ethics department.

66      Brace suffered the adverse employment action of termination.

67      There exists a causal connection between Brace's protected activity and the

adverse employment action.

## NINTH CAUSE OF ACTION
### Retaliation (Title VII)
*42 U.S.C. § 2000e* et seq.

68      Brace engaged in the protected activity of filing a complaint of race and national

origin discrimination with AT&T's ethics department.

69      Brace suffered the adverse employment action of termination.

70      There exists a causal connection between Brace's protected activity and the

adverse employment action.

## PRAYER FOR PUNITIVE DAMAGES

71      As to Brace's claims under federal law, Defendant is liable for compensatory

damages and at least one of the following factors was present and related to the conduct for which

it is liable:

**71.1**      Malice;

**71.2**      An evil motive; and/or

**71.3**      Callous indifference to a federally protected right.

**72**     As to Brace's claims under state law, Defendant is liable for compensatory damages and at least one of the following factors was present and related to the conduct for which it is liable:

    **72.1**     Fraud;

    **72.2**     Malice; and/or

    **72.3**     Willful or wanton conduct.

**73**     Officers, directors, and/or managers of Defendant participated in and/or condoned the conduct constituting the aggravating factor giving rise to punitive damages.

## REQUEST FOR JURY TRIAL

**74**     Plaintiff requests a trial by jury on all issues so triable.

    **WHEREFORE,** the Plaintiff respectfully requests this Court that it:

**1**     Enter judgment for Brace against Defendant on all causes of action contained herein;

**2**     Award Brace damages, including punitive damages, in an amount to be determined at trial;

**3**     Tax the costs of this action against Defendant and award Brace reasonable attorney fees as permitted by law, and;

**4**     Grant such other and further relief as the Court deems just and proper.

### [SIGNATURE ON FOLLOWING PAGE]

*Respectfully submitted on this, the 23rd day of December, 2024.*

/s/ CRAIG HENSEL

*Attorney for Plaintiff*
NC State Bar No. 40852
HENSEL LAW, PLLC
Post Office Box 39270
Greensboro, North Carolina 27438
Phone: (336) 218-6466
Fax: (336) 218-6467
craig.hensel@hensellaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2024, I electronically filed the foregoing Complaint and Request for Jury Trial with the Clerk of Court using the CM/ECF system, and will serve the following by Certified Mail, return receipt:

AT&T Mobility Services, LLC
c/o CT Corporation System
160 Mine Lake Ct., Ste. 200
Raleigh, NC 27615-6417
*Registered Agent for Defendant*

/s/ CRAIG HENSEL

*Attorney for Plaintiff*
NC State Bar No. 40852
HENSEL LAW, PLLC
Post Office Box 39270
Greensboro, North Carolina 27438
Phone: (336) 218-6466
Fax: (336) 218-6467
craig.hensel@hensellaw.com